UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| SHARRON DESROCHERS,<br>　　　　Plaintiff,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY, INC.<br>　d/b/a Tom's Of Maine, Inc.<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)  Case No. 22-cv-____ - ___<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Sharron Desrochers complains against Defendant Colgate-Palmolive Company, Inc. doing business as Tom's of Maine, Inc. as follows:

### PARTIES

1. Plaintiff Sharron Desrochers is a resident of Alfred, Maine.

2. Defendant Colgate-Palmolive Company, Inc. is a Delaware corporation with a principal place of business in New York, NY. Colgate-Palmolive has done and continues to do business in Kennebunk and Sanford, Maine under its wholly-owned subsidiary, Tom's Of Maine, Inc., a Maine corporation in good standing.

### JURISDICTION AND VENUE

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00

4. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2). Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because Plaintiff is a resident of York County and the majority of the events at issue occurred in York County.

5. Plaintiff has exhausted all necessary administrative remedies and has otherwise met all conditions before commencing suit on this matter, including receipt of a Notice of Right to Sue issued by the Maine Human Rights Commission.

## JURY TRIAL DEMAND

6. Plaintiff demands trial by jury on all issues. Fed. R. Civ. P. 38(d).

## FACTUAL ALLEGATIONS

7. In July 2016, Defendant contracted with a staffing agency to employ Plaintiff as a temporary laborer.

8. In February 2017, one of Plaintiff's supervisors, Israel Ollennu ("IO"), began making unwelcome sexual advances toward Plaintiff.

9. Plaintiff rejected IO's advances.

10. IO was angry that Plaintiff rejected his advances. He retaliated against Plaintiff writing her up multiple times between 2017 and 2019 and issuing a final written warning without basis or justification.

11. Plaintiff objected to the unwarranted discipline on several occasions.

12. In May 2017, Defendant hired Plaintiff as a "Make Technician" on a full-time basis on the third shift (11:00 p.m. to 7:30 a.m.).

13. In early 2019, two of Plaintiff's co-workers, Tommy Bozsik ("TB") and Jim Ricker ("JR"), began sexually harassing and bullying her.  The harassment continued until Plaintiff was compelled to resign in late September 2020.

14. Among other things, JR and TB referred to Plaintiff as a "useless cunt" and a "bitch" and made many other derogatory and sexually charged comments.

15. Plaintiff reported JR's and TB's harassment to her supervisors, to human resources, and to the Plant Manager. Defendant did not take her complaints seriously, did not investigate, and took no action to prevent or address harassment.

16. By March 2019, after Plaintiff elevated her complaints to HR, Defendant asked first-shift Make Technician Wayne Brosco, a 25+ year veteran, to work on the third shift to train and supervise the technicians.

17. Unfortunately, Mr. Brosco's efforts were in vain. JR and TB didn't listen to Mr. Brosco and continued harassing and bullying Plaintiff. Mr. Brosco informed the Plant Manager and HR that Plaintiff met and exceeded performance expectations, and that JR and TB regularly harassed and degraded Plaintiff.

18. TB and JR frequently abandoned their posts during their shifts, often disappearing for 30-120 minutes at a time. Plaintiff was left alone to complete their work. This resulted in occasional errors, for which Plaintiff was reprimanded.

19. In response to Defendant's reprimands, Plaintiff truthfully reported that TB and JR abandoned their positions and frequently falsified documents and signed reports when they returned to make it appear that they had not been absent.

20. Rather than investigating or otherwise addressing these issues with TB and JR, Defendant disciplined Plaintiff.

21. Plaintiff's male third-shift Make Technician co-workers earned as much as $2/hour or $4/hour more than she did. Plaintiff complained several times about the pay disparity, but Defendant ignored her.

22. Plaintiff complained many times to Defendant that male Make Technicians were paid more than she was for the same work. She further complained and expressed her strong opposition to the fact that Defendant responded to her errors with written reprimands and formal discipline, while it not only ignored her explanations for some of her errors, but treated men who made errors much differently. Mistakes made by men were minimized or forgotten.

23. Because Defendant refused to address TB's and JR's behavior or the sex-based discrimination to which she was subjected, Plaintiff requested to be transferred to a new position or shift on several occasions.

24. Defendant denied Plaintiff's transfer requests, claiming that the discipline she had received (including the retaliatory discipline from IO) precluded her from transfers or raises. In short, Plaintiff was trapped working on the third shift with TB and JR, and Defendant refused to address her complaints about them.

25. In October and November 2019, Plaintiff continued to report JR's and TB's egregious conduct to her supervisors and HR.

26. Defendant failed to take any meaningful action or investigate. TB and JR continued to harass Plaintiff with impunity.

27. On January 15, 2020, Plaintiff elevated her complaints to Colgate-Palmolive HR Business Associate Priyanka Sidhore. Almost *a month later*, HR *began* to investigate Plaintiff many complaints of harassment and gender discrimination.

28. Between February and May 2020, Colgate-Palmolive Senior HR Business Partner Jackie Mendez interviewed 10 witnesses, including Plaintiff.

4

29. In May 2020, Ms. Mendez issued an investigation report and several addenda. Nearly every witness, save for TB and JR, corroborated Plaintiff's reports about TB's and JR's frequent harassment of Plaintiff. In addition, Ms. Mendez substantiated, at least in part, Plaintiff's complaints about IO.

30. Even after Ms. Mendez's investigation report verified Plaintiff's complaints through multiple witnesses, Defendant took no remedial action.

31. Five months after Ms. Mendez's report, on September 21, 2020, JR physically assaulted Plaintiff at work on two occasions. First, JR hit Plaintiff in the back of the head, and later shoved and tripped her.

32. Plaintiff immediately went to the security guard on duty to see if he had witnessed the assaults on the surveillance system. The security guard confirmed that he had and confirmed that the assaults were captured on video.

33. The physical assaults were the proverbial "final straw" for Plaintiff. She had spent *years* reporting sexual harassment, sex discrimination, unlawful gender-based pay disparities, and retaliation to Defendant. For *years* Defendant refused to act; *even after* investigating and substantiating her complaints.

34. Rather than address her complaints, Defendant disciplined her, denied her a rate of pay equal to that of her male co-workers, denied her requests to transfer away from her abusers, and fostered an environment in which JR felt comfortable *physically assaulting* his female co-worker multiple times in one day.

35. On September 21, 2020, the same day JR twice assaulted her, Plaintiff was compelled to give her "2-week notice." Her last day of work was October 2, 2020.

## COUNT I
### Sex Discrimination/Hostile Work Environment in Violation of MHRA

36. Paragraphs 1-35 are incorporated by reference.

37. Plaintiff, a female, is a member of a protected class under the MHRA.

38. Plaintiff was subjected to unwelcome harassment based on sex. The sexual harassment to which she was subjected was severe, pervasive, and altered the conditions of her employment and created an abusive work environment.

39. The sexual harassment to which Plaintiff was subjected was objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Plaintiff in fact perceived it as hostile and abusive.

40. Defendant knew about the sexual harassment, permitted a sexually hostile work environment, and failed to take prompt remedial action.

41. As a direct and proximate result of Defendant's acts and omissions, namely permitting a sexually hostile work environment, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Human Rights Act:

A. Back pay and lost income from October 2, 2020 with prejudgment interest;

B. Compensatory damages in an amount not to exceed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## COUNT II
### Disparate Treatment Sex Discrimination in Violation of MHRA

42. Paragraphs 1-41 are incorporated by reference.

43. Plaintiff, a female, is a member of a protected class under the MHRA.

44. Plaintiff was qualified to perform the essential functions of her job.

45. Plaintiff was subjected to adverse employment action, namely, her compelled resignation on or about October 2, 2020 and unequal pay throughout her employment with Defendant.

46. Defendant discriminated against Plaintiff on the basis of her sex, including but not limited to the fact that it ignored or disregarded Plaintiff's numerous complaints about workplace hostility and its more favorable treatment of and compensation for Plaintiff's male co-workers.

47. As a direct and proximate result of Defendant's discriminatory conduct and because of her compelled resignation, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Human Rights Act:

A. Back pay and lost income from October 2, 2020 with prejudgment interest;

B. Compensatory damages in an amount not to exceed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## COUNT III
### Retaliation in Violation of MHRA

48. Paragraphs 1-47 are incorporated by reference.

49. By opposing discriminatory acts or practices, and because Defendant coerced, intimidated, threatened, or interfered with Plaintiff's right to be free from discrimination or harassment, Plaintiff engaged in activity protected by the MHRA.

50. Plaintiff was subjected to adverse employment action, including but not limited to increased workplace hostility; her employer's continuous refusal to investigate or take prompt remedial action in response to her complaints and reports; her employer's refusal to transfer, reassign, or promote Plaintiff; and her employer's tolerance of a sexually hostile work environment, which contributed to Plaintiffs constructive discharge or compelled decision to resign on October 2, 2020.

51. As a direct and proximate result of Defendant's unlawful retaliation and Plaintiff's compelled resignation, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Human Rights Act:

A. Back pay and lost income from October 2, 2020 with prejudgment interest;

B. Compensatory damages in an amount not to exceed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## COUNT IV
### Retaliation in Violation of MWPA

52. Paragraphs 1-51 are incorporated by reference.

53. By making several reports and complaints to her employer about acts or practices which Plaintiff reasonably believed to be unlawful and/or or which she reasonably believed placed at risk the health and safety of herself or others, Plaintiff engaged in activity protected by the MWPA.

54. Plaintiff was subjected to adverse employment action, including but not limited to increased workplace hostility; her employer's continuous refusal to investigate or take prompt remedial action in response to her complaints and reports; her employer's refusal to transfer, reassign, or promote Plaintiff; and her employer's tolerance of a sexually hostile work environment, which contributed to Plaintiffs constructive discharge or compelled decision to resign on October 2, 2020.

55. As a direct and proximate result of Defendant's unlawful retaliation and Plaintiff's compelled resignation, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Human Rights Act:

A. Back pay and lost income from October 2, 2020 with prejudgment interest;

B. Compensatory damages in an amount not to exceed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## COUNT VI
## Violation of Maine Equal Pay Law

56. Paragraphs 1-55 are incorporated by reference.

57. Under the Maine Equal Pay Law, 26 M.R.S. § 628, employers "may not discriminate between employees on the basis of sex by paying wages to any employees in any occupation at a rate less than the rate at which the employer pays any employee of the opposite sex for comparable work on jobs that have comparable requirements relating to skill, effort and responsibility."

58. As set forth above, Defendant violated the Maine Equal Pay Law by, among other acts or omissions, paying Plaintiff, a female, at a rate less than the rate it paid male employees for comparable work on jobs that have comparable requirements relating to skill, effort, and responsibility.

59. As a direct and proximate result of Defendant's acts and omissions, Plaintiff sustained pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Equal Pay Law:

A. The difference between what Plaintiff was paid and what her male colleagues were paid, from April 7, 2017 to October 2, 2020, with prejudgment interest (i.e., the "pay differential");

B. Liquidated damages in an amount equal to twice the pay differential;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

**Dated:** March 23, 2022                    Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford (james@cliffordclifford.com)

*/s/ Andrew P. Cotter*
Andrew P. Cotter (andrew@cliffordclifford.com)

CLIFFORD & CLIFFORD, LLC
10 Moulton St., 5th Floor
Portland, ME 04101
(207) 613-9465

**NOTE new address/telephone number**

11